# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVE DINWIDDIE, | ) |
| Petitioner, | ) ) ) |
| vs. | ) CIVIL NO. 05-886-GPM |
| JOHN EVANS, | ) ) ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Petitioner brings this action under 28 U.S.C. § 2254 challenging his civil commitment as a sexually dangerous person. This matter is before the Court on the Report and Recommendation of United States Magistrate Judge Donald G. Wilkerson (Doc. 25), recommending that the Petition for a Writ of Habeas Corpus filed by Petitioner be denied. Respondent filed objections to the Report and Recommendation on January 11, 2008 (Doc. 27),[1] and Petitioner filed objections on January 18, 2008 (Doc 29).

### I. BACKGROUND

A. Trial and Direct Appeal

Petitioner Steven Dinwiddie was civilly committed to the guardianship of the Illinois Director of Corrections as a sexually dangerous person on April 29, 1998, following a jury trial (Doc. 15-2). He appealed this judgment to the Illinois Appellate Court, Fifth District, raising the

---

[1] John Evans has replaced Roy Bradford as Warden of Big Muddy River Correctional Center and is, therefore, substituted as the proper respondent.

following issues: the trial court's admission of out-of-court statements of a minor concerning alleged sexual abuse; the trial court's exclusion of spectators during the testimony of a minor concerning alleged sexual abuse; ineffective assistance of counsel; and the State's failure to carry its burden of proof (Docs. 15-5 and 15-6). The appellate court affirmed his commitment on July 8, 1999 (Doc. 15-4). He then petitioned for leave to appeal to the Illinois Supreme Court, which denied the petition on October 6, 1999 (Doc. 15-11).

B. First Proceeding After Commitment

Petitioner filed an "Application for Recovery" under 725 ILCS 205/9 requesting that he be released on September 29, 2000 (Doc. 15-2). He withdrew this application on June 19, 2001, and filed another 725 ILCS 205/9 proceeding on July 16, 2002 (Doc. 15-2) (referred to as the "first 725 ILCS 205/9 proceeding"). Following a jury trial on the July 16th application for recovery, the court entered judgment on a jury verdict that Petitioner was still a sexually dangerous person on July 24, 2002 (Doc. 15-3 at 5).

Petitioner appealed this judgment to the Illinois Appellate Court, Fifth District, raising the following issues: the trial court's denial of Petitioner's motion to strike the testimony of a psychologist in violation of Illinois law; the trial court's decision not to order the jury to strike the testimony of a witness who was not properly qualified as an expert; and the unconstitutionality of the Application Showing Recovery provision of the Sexually Dangerous Persons Act under *Kansas v. Hendricks*, 521 U.S. 346 (1997), and *Kansas v. Crane*, 534 U.S. 407 (2002) (Docs. 15-12, 15-13, 15-14). The Appellate Court affirmed on the merits on June 18, 2003 (Doc. 15-17). He petitioned for leave to appeal, but the Illinois Supreme Court denied it on December 2, 2003 (Doc. 15-19).

C. Second Proceeding After Commitment

While Petitioner was appealing the July 24, 2002 judgment (the first proceeding), he filed two *pro se* applications for release with the Jefferson County Circuit Court. The first application (referred to as the "second 725 ILCS 205/9 proceeding") was dismissed on August 2, 2002, and he did not appeal that dismissal (Doc. 15-3 at 3-4).

D. Third Proceeding After Commitment

The second *pro se* application (referred to as the "third 725 ILCS 205/9 proceeding") resulted in a bench trial, and the court entered judgment on May 6, 2004, finding that Petitioner remained a sexually dangerous person (Doc. 15-3 at 12). The Appellate Court dismissed the appeal on the grounds of statutory waiver on June 27, 2005 (Doc. 15-24). Respondent alleges that Petitioner did not file a petition for leave to appeal this decision with the Illinois Supreme Court (Doc. 15 at 5). Petitioner indicates that he filed a petition for leave to appeal this decision in April 2004 (Doc. 29 at 3). Since this predates the trial court's entry of judgment, this assertion cannot be correct.[2]

E. Federal Habeas Corpus Petition

On December 19, 2005, Petitioner filed the instant Petition for Writ of Habeas Corpus, challenging his confinement in the Big Muddy River Correctional Center and his classification as a sexually dangerous person pursuant to 725 ILCS 205/0.01, *et seq.* (Doc. 1). He alleges that he received ineffective assistance of counsel in that his counsel failed to obtain a police report, to investigate the matter, to ensure by subpoena that necessary witnesses were present, and to argue

---

[2] While the Illinois Supreme Court did deny a petition for leave to appeal in one of Petitioner's cases on May 31, 2007, in *People v. Dinwiddie*, 871 N.E.2d 57 (Ill. 2007) (Table), this does not pertain to the "third proceeding," as it bears a different appellate court case number.

that the State had not proved that he was a sexually dangerous person beyond a reasonable doubt.[3]

On February 1, 2006, this Court entered a Memorandum and Order dismissing all counts of the petition which purported to challenge the original judgment finding Petitioner to be a sexually dangerous person because those claims are barred by 28 U.S.C. § 2244(d)(1) (Doc. 5 at 2). However, the Court at that time did not determine whether Petitioner was attempting to challenge his continued civil confinement or whether such challenge to his continued confinement was barred by any limitation to relief under 28 U.S.C. § 2244. The Court ordered Respondent to "answer and show cause why the writ should not issue. Respondent shall specifically address Petitioner's continued civil confinement" (Doc. 5 at 3).

On March 28, 2006, Respondent filed an Answer, requesting that the petition be denied (Doc. 15). Respondent argued that dismissal was appropriate because Petitioner only challenged the 1998 trial and that challenge to that trial was time-barred (Doc. 15 at 8-9). In the alternative, Respondent argued that to the extent Petitioner challenged the subsequent applications for release, those claims either were filed beyond the one year statute of limitations or are procedurally defaulted. Petitioner did not file a reply brief.

Magistrate Judge Wilkerson, construing Petitioner's *pro se* petition broadly, found that Petitioner was not challenging just the initial proceeding committing him to civil confinement, but also all subsequent hearings in which his continued confinement was upheld. Magistrate Judge Wilkerson recommended that Petitioner's challenges to the initial, first, and second proceeding be

---

[3] Petitioner states that, because the two testifying psychiatrists at his trial disagreed about whether he was "sexually dangerous" under the terms of the Sexually Dangerous Persons Act, under *People v. Cole*, 284 N.E.2d 53 (Ill. App. Ct. 1972), he was not found to be sexually dangerous beyond a reasonable doubt.

denied as time-barred by 28 U.S.C. § 2244's statute of limitations (Doc. 25 at 5). Magistrate Judge Wilkerson further recommended that Petitioner's challenge to the third proceeding be denied for failure to exhaust his state court remedies by not filing a petition for leave to appeal the third proceeding with the Illinois Supreme Court.

Although he agrees that Petitioner's Petition should be denied, Respondent objects to "any conclusion that the petition represents a timely challenge to petitioner's third application for recovery" (Doc. 27 at 1). In the alternative, Respondent argues that the Court should adopt the Report and Recommendation.

Petitioner objects to the Report and Recommendation and argues that his challenges were not barred by 28 U.S.C. § 2244. In the alternative, he challenges the first 725 ILCS 205/9 proceeding because it does not fall outside the statute of limitations.

## II. ANALYSIS

When timely objections to a Report and Recommendation have been filed, this Court must undertake a *de novo* review. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); Local Rule 73.1(b) of the United States District Court for the Southern District of Illinois; *Harper v. City of Chicago Heights*, 824 F.Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). The Court "may accept, reject, or modify the magistrate judge's recommended decision." *Harper*, 824 F.Supp. at 788. In making this determination, the Court must look at all of the evidence contained in the record and "give 'fresh consideration to those issues to which specific objections have been made." *Id.*, *quoting* Charles Alan Wright, Arthur M. Miller & Richard L. Marcus, Federal Practice and Procedure: Civil 2d § 3076.8, at p. 55 (1992 Pocket Part).

A. Statute of Limitations

This Court previously found that, to the extent Petitioner is challenging the original 1998 judgment that he is a sexually dangerous person, such challenge is time-barred by 28 U.S.C. § 2244(d)(1) (*see* Doc. 5). The Court did not determine whether challenges to any subsequent 725 ILCS 205/9 proceedings on Petitioner's continued confinement are also time-barred. Magistrate Judge Wilkerson recommended that the 1998 trial and the first and second subsequent proceedings are time-barred, but that the third proceeding is not. Both Respondent and Petitioner challenge this determination. This Court has reviewed the record and pleadings *de novo* and agrees with Magistrate Judge Wilkerson that the 1998 trial and the first and second 725 ILCS 205/9 proceedings are time-barred, but that the third 725 ILCS 205/9 proceeding is not.

Though the face of Petitioner's initial habeas corpus petition appears to raise challenges only to his 1998 trial (Doc. 1), both this Court and Magistrate Judge Wilkerson read the *pro se* petition broadly to include the possible challenge to Petitioner's continued confinement (Docs. 5 at 2 and 25 at 3). *See Whitford v. Boglino*, 63 F.3d 527, 535 n. 10 (7th Cir. 1995) ("the briefs of pro se prisoners who are not skilled in legal analysis must be liberally construed"); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993). Whether a pro se litigant has waived an issue must be determined on the facts of each individual case. *Bates v. Jean,* 745 F.2d 1146, 1150 (7th Cir.1984). This broad reading is supported by the arguments contained in Petitioner's objections to the Report and Recommendation (Doc. 29 at 2-3).

Reading a "continued confinement" challenge into Petitioner's habeas petition means that Petitioner is challenging both the 1998 trial and the subsequent Writ of Recovery actions. Petitioner asserts in his objections that he does challenge his "continued confinement" and not just the initial

trial. Because of both this broad construction of *pro se* petitions and the fact that Petitioner makes clear that he wishes to challenge his continued confinement, the Court will examine all of the proceedings.[4]

As discussed above, this Court already found that a challenge to the 1998 trial would be time-barred because "he did not file this action until December 19, 2005, over five years after the end of the one-year limitation period" (Doc. 5 at 2). Petitioner makes two arguments challenging this Court's finding as to the 1998 trial and Magistrate Judge Wilkerson's findings that the first and second 725 ILCS 205/9 proceedings are time-barred, all of which are without merit.[5]

He argues that none of his challenges is time-barred, relying on subpart (2) of 28 U.S.C. § 2244(d). Neither this Court nor the Magistrate Judge explicitly considered this subpart, which reads: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted

---

[4] Petitioner appears to believe that "continued confinement" is itself a separate claim that is not time-barred (because his confinement continues today). Since Petitioner has not raised any grounds by which his "continued confinement" itself violates the Constitution, his challenge must be read as applying only to the trials that initiated or continued his confinement. Indeed, the only grievance Petitioner raises in his Objection (the initial Petition appears to raise only defects in the 1998 trial) is that the "trial court had not applied the new standards enumerated by the Illinois Supreme Court" in *People v. Masterson*, 798 N.E.2d 735 (applying *Kansas v. Crane*, 534 U.S. 407, 412 (2002) to Illinois statute), which is necessarily a challenge to a particular trial, though Petitioner does not clearly indicate which one (Doc. 29 at 3).

[5] Though Petitioner does not make this argument, it is pertinent to note that 28 U.S.C. § 2244(d)(1)(C) (one-year limitations period runs from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review") does not make Petitioner's challenges timely. Petitioner's only arguably "new" constitutional rights are the ones recognized in *Kansas v. Crane* in 2002, and they were only "new" relative to the 1998 trial. (In fact, Petitioner raised this issue on appeal of his first 725 ILCS 205/9 proceeding.) Even if we "start the clock" at the date of *Crane*, the later of the two cases, the limitations period expired January 22, 2003, more than two years before Petitioner filed his habeas petition.

toward any period of limitation under this subsection." This argument fails because the term "collateral review" in 28 U.S.C. § 2244(d)(2) does not include 725 ILCS 205/9 proceedings. Illinois law[6] does not specifically address whether the "writ of recovery" action is a collateral review or some other form of proceeding. However, the standard legal definition of "collateral attack," a similar term, implies that the attack must undermine the original trial by showing that *it* was somehow improper.[7] In addition, one Illinois case does imply by negative inference that the 725 ILCS 205/9 proceeding is not a collateral attack because it sets up an alternative means by which those committed as sexually dangerous might collaterally attack the judgments committing them. *People v. Lawton*, 818 N.E.2d 326 (Ill. 2004).

Petitioner argues that the three 725 ILCS 205/9 proceedings were collateral reviews within the meaning of 28 U.S.C. § 2244(d)(1), because "it is the same challenges each time a writ of recovery is filed and that is challenge to his continue[d] confinement." It is true that the same basic issue is contested in each proceeding, whether Petitioner remains sexually dangerous, but each 725 ILCS 205/9 proceeding is independent of the others. The State of Illinois must prove in each proceeding that Petitioner *remains* sexually dangerous; if the State fails to sustain its burden of proof this does not undermine the *earlier* judgements. So, the state's failure to carry its burden of proof means only that Petitioner *is no longer* sexually dangerous. While each 725 ILCS 205/9 proceeding affords Petitioner an opportunity to challenge the continuance of his confinement, the claims are

---

[6] The question of whether a state proceeding is a collateral review for habeas purposes is one of state law. *Graham v. Borgen*, 483 F.3d 475, 479 (7th Cir. 2007).

[7] "Collateral attack. An attack on a judgment in a proceeding other than a direct appeal; esp., an attempt to undermine a judgment through a judicial proceeding in which the ground of the proceeding (or a defense in the proceeding) is that the judgment is ineffective." Black's Law Dictionary (8th ed. 2004).

independent because they arise at different times. Accordingly, these proceedings are not collateral reviews of the 1998 trial or earlier claims, and Petitioner must, if he brings a habeas corpus claim as to any of them, fully exhaust his state courts' remedies for each.

In addition, Petitioner inaccurately states that this Court "has rule[d] that this application is not time-barred under 2244(d)(1)" (Doc. 29 at 2). He refers to the Court's statement in the February 2, 2006, Order that the "Court is unable to determine whether such a challenge is barred by either the one-year period of limitation or by any other limitation to relief pursuant to 28 U.S.C. § 2254. Accordingly, to the extent Petitioner is challenging his continued civil confinement, this action cannot be dismissed at this point in the litigation" (Doc. 5 at 2). This characterization is incorrect – the Court did not hold that the challenge was not barred, but simply that the "Court [was] unable to determine whether such a challenge is barred" (Doc. 5 at 2).

The 1998 trial and the first and second 725 ILCS 205/9 proceedings are time-barred under 28 U.S.C. § 2244(d). The 1998 trial was final more than five years before Petitioner filed this habeas petition, and Petitioner has not alleged any of the exceptions listed in 28 U.S.C. § 2244(d)(1). The first proceeding – initiated July 16, 2002 – ended December 3, 2003, when the Illinois Supreme Court denied leave to appeal, and became final March 2, 2004. The second proceeding was dismissed by the trial court on August 2, 2002, and became final October 31, 2002. More than one year elapsed between the date each of these became final and the date this habeas petition was filed; therefore, these are barred under 28 U.S.C. § 2244(d)(1). As discussed above, 28 U.S.C. § 2244(d)(2) does not toll the limitations period for the 1998 trial or either of the later 725 ILCS 205/9 proceedings, since these can't be characterized as collateral reviews of either the 1998 trial or later two proceedings. The third proceeding is not barred by the statute of limitations because that

proceeding ended in 2005, the same year that Petitioner filed this habeas corpus petition.

B. Procedural Default

While the "continued confinement" challenge opens the way for this Court to evaluate each of the proceedings in which Petitioner has challenged his commitment as sexually dangerous,[8] it is not a "magic" term that releases Petitioner from the obligations of habeas corpus law. Thus, only claims based on the purported defects in the third 725 ILCS 205/9 proceeding are still available, since the other proceedings' defects are barred by the statute of limitations. The claims in this third proceeding are scotched by procedural default.[9]

There are two contexts in which procedural default arises: (1) where the petitioner fails to give the state courts a full and fair opportunity to review his claim (sometimes known as the "exhaustion" requirement) and (2) where the state court judgment rests on independent and adequate state law grounds, including state procedural rules (otherwise known as "procedural bar"). *Spreitzer v. Schomig*, 219 F.3d 639, 644 (7th Cir. 2000) (failure to give state full and fair opportunity obviated need to address adequate and independent state law grounds issue). Failure of either makes federal

---

[8] As mentioned above, the 725 ILCS 205/9 proceedings are not collateral attacks of the judgment that committed Petitioner to civil confinement, but rather are related but independent proceedings seeking to determine whether Petitioner still is sexually dangerous. If a 725 ILCS 205/9 proceeding were to result in a finding that Petitioner is no longer sexually dangerous, that does not mean that the initial judgment was wrong, but instead that he has recovered. *People v. Lindsey*, 256 N.E.2d 808, 809 (Ill. 1970). Since the 725 ILCS 205/9 proceedings are not collateral attacks of the initial judgment or of each other, they do not each raise or preserve the claims from the previous proceedings. Therefore, only Petitioner's claims relating to the third 725 ILCS 205/9 proceeding and its alleged defects are available for habeas review.

[9] Petitioner appears to believe that "continued confinement" is itself a separate claim that is not procedurally defaulted (because he has challenged his confinement in several proceedings, exhausting at least the first attempt). As discussed at footnote 4, however, even the "continued confinement" challenge applies only to particular proceedings, not just "confinement" as an ongoing condition.

habeas relief unavailable. This Court agrees with Magistrate Judge Wilkerson that Petitioner's claim is procedurally defaulted under the first category and adds that it also is barred under the second category.

   1. Full and Fair Opportunity

  The AEDPA provides that an application for habeas corpus shall not be granted unless the applicant has exhausted the remedies available in the courts of the State," such that he lacks "the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(b)(1)(A), (c). The principle of exhaustion is based on comity and the fact that state courts, like federal courts, are obliged to enforce federal law. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999); *see also Spreitzer*, 219 F.3d at 645. Thus, comity dictates that "when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *Boerckel*, 526 U.S. at 844. A petitioner must give the state courts a "full and fair opportunity" to hear his claims. A full presentation of claims entails pursuit of all available avenues of relief offered by the state courts before turning to the federal courts, while a fair presentation requires that the petitioner give the state courts an opportunity to deal with the particular claims or issues later brought to the federal courts. *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999).

   A. Full Opportunity

  Here, Petitioner failed to petition the Illinois Supreme Court for leave to appeal the third 725 ILCS 205/9 proceeding. Respondent raised this matter(Doc. 15 at 5), and Petitioner did not until his Objections to Magistrate Judge Wilkerson's Report and Recommendation claim to have actually petitioned for leave to appeal to the Supreme Court of Illinois. He says he did so in April 2004

(Doc. 29 at 4). But this can't be, since this predates the trial court's entry of judgment. And as discussed above, while the Illinois Supreme Court did deny a petition for leave to appeal in one of Petitioner's cases on May 31, 2007, in *People v. Dinwiddie*, 871 N.E.2d 57 (Ill. 2007) (Table), this does not pertain to the third proceeding.

Petitioner failed to fully exhaust his state court remedies by failing to petition the Illinois Supreme Court for leave to appeal the third 725 ILCS 205/9 proceeding. In *Boerckel*, the Supreme Court held that a petitioner is required to present his claims to the Illinois Supreme Court, though that court's decision to hear such a claim was discretionary. 526 U.S. at 846, 848.

Petitioner argues that he did "in fact present his claim to one complete round of state court review, and had completely exhaust[ed] his state court remedies in (2003) on the 7th day of July" (Doc. 29 at 4)." It is true that he did complete two full rounds of state court review, for his 1998 trial and the first 725 ILCS 205/9 proceeding. However, the relevant inquiry is not whether Petitioner has ever exhausted state remedies for any claims, but whether he exhausted his state remedies for the claims that are still available for review. While his claims relating to the third proceeding are not time-barred, they are barred because he failed to exhaust his available state remedies.

A state law remedy must be available, of course, in order for a petitioner to exhaust it. *Boerckel* appeared to leave open whether a remedy is still "available" if the time has run for seeking review of a decision in state court. Some light was shed on this issue when the Court explained in *Edwards v. Carpenter* that it had

> considered the interplay between exhaustion ["full and fair opportunity"] and procedural default ["adequate and independent state grounds"] … in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999), concluding that the latter doctrine was necessary to "'protect the integrity' of the federal exhaustion rule." *Id.*, at 848, 119 S. Ct. 1728 (quoting *id.*, at 853, 119 S. Ct. 1728 (STEVENS, J., dissenting)). The purposes of the

> exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were no longer available. *Id.*, at 848, 119 S. Ct. 1728.

529 U.S. 446, 453 (2000).

This was further clarified in *Woodford v. Ngo*:

> In habeas, state-court remedies are described as having been "exhausted" when they are no longer available, regardless of the reason for their unavailability. *See Gray v. Netherland,* 518 U.S. 152, 161, 116 S. Ct. 2074, 135 L. Ed. 2d 457 (1996). Thus, if state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted, *ibid.*, but exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding. *Id.*, at 162, 116 S. Ct. 2074; *Coleman, supra,* at 744-751, 111 S. Ct. 2546.

548 U.S. 81, 126 S. Ct. 2378, 2387 (2006). When the citation to *Gray v. Netherland* is analyzed, the Court's note that "if the petitioner procedurally defaulted those claims [by failing to present them to the state court in time for it to hear them], the prisoner generally is barred from asserting those claims in a federal habeas proceeding" becomes clearer. While the remedy may be unavailable, that unavailability (because of the petitioner's failure to comply with the state court's timing rules) is itself an adequate and independent state-law ground that bars a federal court's ability to hear the claim.

Petitioner alternatively argues that there is no state court remedy available to allow him to raise his claim that the "trial court had not applied the new standards enumerated by the Illinois Supreme Court" in *People v. Masterson*, 798 N.E.2d 735 (Ill. 2003) (applying *Kansas v. Crane*, 534 U.S. 407, 412 (2002) to Illinois statute) (Doc. 29 at 3). Petitioner could have raised this issue in any

of the 725 ILCS 205/9 proceedings,[10] assuming these proceedings are the "trial court" to which he refers. It was not raised in the third 725 ILCS 205/9 proceeding, which was not fully exhausted in any event.[11]

### B. Fair Opportunity

Since Petitioner failed even to seek a full hearing by the state courts relating to his third 725 ILCS 205/9 proceeding, a full discussion of whether he "fairly presented"[12] his constitutional claims

---

[10] Of course, only the third 725 ILCS 205/9 proceeding is relevant here, since it is not time-barred. Petitioner did raise the *Hendricks/Crane* issue as to the first 725 ILCS 205/9 trial on appeal of that judgment (Doc. 15-12).

[11] Petitioner arguably is correct that there is no direct state court remedy for a failure of the 1998 trial court to follow *Kansas v. Hendricks* or *Kansas v. Crane*, since the Illinois Post-Conviction Hearing Act, 725 ILCS-5/122-1, is not available to persons confined as sexually dangerous, *People v. Lindsey*, 256 N.E.2d 808, 809 (Ill. 1970), and since defects in initial committing trials are not available as bases for claims in 725 ILCS 205/9 proceedings. *People v. Lawton* opened a method by which persons committed as sexually dangerous under the Illinois SDPA could mount a collateral attack on constitutional violations in their trials. The Illinois civil relief from judgments statute, section 2-1401 of the Illinois Code of Civil Procedure, is now clearly available (and may have previously been available) to persons committed as sexually dangerous and provides an available state means of collateral attack. 818 N.E.2d 326, 333-34 (Ill. 2004). In *U.S. ex rel. Branion v. Gramly*, though, the district court held that "since the two-year limitations period [had] lapsed, 2-1401 is not a state remedy still available" to a habeas corpus petitioner, and so he had not failed to exhaust his state remedies. 664 F. Supp. 1149, 1151 (N.D. Ill. 1987). This likely is inapplicable now, though, since the later cases of *Boerckel*, *Edwards*, and *Woodford*, discussed above, show that while a remedy may be unavailable because of the petitioner's failure to comply with the state court's timing rules, that unavailability is itself an adequate and independent state-law ground that bars a federal court's ability to hear the claim.

It is unnecessary to decide whether there would be an available state remedy for the 1998 trial's alleged constitutional violations because claims relating to that trial are time-barred. Both the statute of limitations and the procedural default rules must be satisfied for a habeas claim to be heard. 28 U.S.C. §§ 2244(d), 2254(b).

[12] "Fair presentment" requires that the state court be alerted to the presence of a federal constitutional issue:

> One consideration in our fair presentment inquiry is whether [Petitioner] cited either federal cases that employed constitutional analysis or state cases that applied a constitutional analysis to a set of similar facts. *See Wilson v. Briley,* 243 F.3d 325, 327 (7th Cir.2001). However, the habeas petitioner is

based on that proceeding to the Illinois courts is unnecessary. It is relevant to observe however, that the only grounds of Petitioner's appeal of the third 725 ILCS 205/9 proceeding were state law issues, so he necessarily failed to give the state courts a fair opportunity to determine whatever federal constitutional issues he brings from that proceeding. In his two briefs to the appellate court, Petitioner, who was represented by counsel, raised only state-law evidentiary and procedural issues and failed to raise or even imply any federal constitutional claims (Docs. 15-20 and 15-23).[13]

---

> not limited to presenting his federal claim to the state courts by citing "book and verse" of the Constitution, *see Picard* [*v. Connor,* 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971)]; rather, our analysis focuses on whether the petitioner has offered the operative facts and controlling legal principles of his claim to the state courts, *Anderson v. Benik,* 471 F.3d 811, 814 (7th Cir.2006); *Verdin v. O'Leary,* 972 F.2d 1467, 1474 (7th Cir.1992). So we must also inquire into whether the petitioner has framed his claim in the state proceedings in a way that brings to mind a specific constitutional right, and whether he has alleged a set of facts "well within the mainstream of constitutional litigation." *Wilson,* 243 F.3d at 327. In short, we assess whether the petitioner alerted the state court to the federal nature of his claim in a manner sufficient to allow that court to address the issue on a federal basis. *Verdin,* 972 F.2d at 1476.

*Lieberman v. Thomas*, 505 F.3d 665, 670 (7th Cir. 2007) (alleging a "constitutional" right in state court not fair presentment though state petition read broadly in petitioner's favor); *see also Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001) (other factors are "whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and …whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation").

[13] Petitioner presented two briefs to the Illinois Appellate Court. In the first, he raised two issues of state evidence law relating to the admission of experts and actuarial instruments (Docs. 15-20, 15-21). Petitioner's reliance on *Frye v. United States*, 293 F.2d 1013 (D.C. Cir. 1923), a federal case, because Illinois has adopted the *Frye* standard for scientific evidence and continues to use it (while the federal courts are now using the *Daubert* standard) does not create a federal constitutional issue. *See In re Commitment of Sandry*, 857 N.E.2d 295 (Ill. App. Ct. 2006) (citing only Illinois state cases interpreting *Frye* standard).

In his second, supplemental brief, which appeared to change his claim somewhat, Petitioner argued only that the trial court's denial of directed verdict (directed finding) was error, based on the assertion that the expert's report underlying the State's case was insufficient as a matter of law (Doc. 15-23).

Whatever federal claims Petitioner alleges in his habeas petition that pertain to his third 725 ILCS 205/9 proceeding were not fairly presented to the Illinois state courts.

2. Independent and Adequate State Law Grounds

Under the AEDPA, a federal court shall entertain an application for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas relief may be granted only if the adjudication of the claim by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). However, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This doctrine applies to bar consideration of any of a petitioner's claims that a state court declined to address because the petitioner failed to satisfy a state procedural requirement because, under those circumstances, the state judgment rests on independent and adequate state procedural grounds. *Id*. at 729-30. In such a case, the petitioner's claims are "procedurally barred in the federal system," such that his habeas claims are deemed "procedurally defaulted." *Aliwoli v. Gilmore*, 127 F.3d 632, 634 (7th Cir. 1997); *see also Rogers-Bey v. Lane*, 896 F.2d 279, 281-82 (7th Cir. 1990).

The Illinois appellate court dismissed Petitioner's appeal on statutory waiver grounds, as Petitioner's attorney had waived Petitioner's motion for a directed finding at the close of the State's case in chief and had failed to reassert the motion at the close of all the evidence (Doc. 15-24). The Illinois court relied purely on state law, both statutory and case law, to decide that Petitioner had

waived his right to appeal the denial of directed finding, citing clear Illinois law stating that when a defendant proceeds to "adduce evidence in support of his or her defense" after a motion for directed finding is denied, the motion is waived. Petitioner could have reasserted the motion at the close of all the evidence under Illinois law but chose not to do so (Doc. 15-24 at 1-3).[14] The Illinois court also determined from a review of the record that the "evidence presented was more than sufficient" for the State to have met its burden (Doc. 15-24 at 3). Both state substantive and procedural laws are sufficient to procedurally bar a petitioner's claim under the "adequate and independent" state grounds doctrine. *Coleman*, 501 U.S. at 729.

C. Exceptions

In order to escape a procedural default, a petitioner must show cause for the default and prejudice resulting from it, or that a "manifest miscarriage of justice" will result from the denial of the petition. *Coleman*, 501 U.S. at 750; *Edwards*, 529 U.S. at 451; *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002). Petitioner here has not attempted to make either of these arguments.

Finally, Petitioner does make an argument that might be interpreted as a request for this Court to make an exception to the procedural rules of habeas corpus in his case, but it is without

---

[14] Notably, Petitioner does not, and could not, raise a claim of ineffective assistance of counsel in the third proceeding. First, Petitioner does not raise this claim here: all mistakes by counsel alleged by Petitioner clearly pertain only to the 1998 trial counsel. Second, Petitioner could not raise this claim here, as he did not fully or fairly present it to the Illinois state courts. He did not appeal the appellate court's finding of statutory waiver and, therefore, never presented this issue in the state courts. A form of collateral attack would have been available to him to raise the claim under section 2-1401 of the Illinois Code of Civil Procedure, though it is now time-barred because the statute has a two year limitations period. *People v. Lawton*, 818 N.E.2d 326, 333-34 (Ill. 2004). Though this time bar now makes the claim "unavailable" in one sense, under *Boerckel*, *Edwards*, and *Woodford*, while a remedy may be "unavailable" because of the petitioner's failure to comply with the state court's timing rules, that unavailability is itself an adequate and independent state-law ground that bars a federal court's ability to hear the claim.

merit. Petitioner quotes[15] from *People v. Sweeney*, 251 N.E.2d 897, 899 (Ill. App. Ct. 1969) (abrogated on other grounds by *People v. Trainor*, 752 N.E.2d 1055 (Ill. 2001), an Illinois case which, in context, indicates an argument that certain procedural rules may be set aside in certain situations, such as where the petitioner challenges his "continued confinement." The argument as applied here is without merit, as *Sweeney* is an Illinois case and does not govern the federal courts' interpretation or application of federal law.[16]

For the foregoing reasons, the Report and Recommendation of Magistrate Judge Wilkerson (Doc. 25) is **ADOPTED**. The petition under 28 U.S.C. § 2254 for writ of habeas corpus (Doc. 1) is **DENIED**, and this action is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: 04/21/2008

s/ G. Patrick Murphy
G. Patrick Murphy
United States District Judge

---

[15] The quoted language: "the rationale of *Capoldi* is compelling, particularly where the matter before the court is the petition for a writ of recovery as opposed to the original petition seeking to have the person declared a sexually dangerous person. However, since we are dealing with a case involving the question of the continued confinement of the defendant, and in view of the concern expressed by our courts in this type of case (e.g., *The People v. Nastasi*o, 19 Ill.2d 524, 528, 168 N.E.2d 728 (1960); *The People v. Capoldi*, 10 Ill.2d 261, 267, 268, 139 N.E.2d 776 (1957); *People v. Beshears*, 65 Ill.App.2d 446, 458, 213 N.E.2d 55 (1965))" (Doc. 29, p. 2, *apparently quoting People v. Sweeney*, 251 N.E.2d 897, 899 (Ill. App. 1969) (emphasis added by Petitioner). Petitioner did not actually cite *Sweeney*, but the passage only appears in that case when all reported cases are searched in Westlaw.

[16] Even the Illinois court in *Sweeney* limited its reach, excusing the defendant's failure to abide by a procedural rule, but doing so "without establishing a precedent." *Sweeney*, 251 N.E.2d at 899. Another factor in the court's decision was that the "State had not objected to a consideration of the appeal." *Id*.